# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **CLYDE DAVID SCOTT, JR.,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 1:25-cv-00398-RDP |
| } | |
| **WALTER D. HAWKINS et al.,** } | |
| } | |
| **Defendants.** } | |
| } | |

## **MEMORANDUM OPINION**

This matter is before the court on Plaintiff's Motion to Remand. (Doc. # 3). The Motion has been briefed and is ripe for review. (Docs. # 3, 4, 7). For the reasons discussed below, the Motion (Doc. # 3) is due to be granted.

**I.     Introduction (The Weird World of Removal/Remand and an Analog)**

Once upon a time (actually, it was in the spring of 2003), there was a lawyer who had been nominated for a federal judgeship. A friend questioned whether he was really ready for that process. After all, the friend noted, the lawyer had never really been involved in politics. But the nominee was quick to offer a correction. He indeed had been involved in politics. In fact, he was already engaged in the ultimate arena of politics – he coached Little League baseball.

To be sure, the politics of Little League provide a fitting analog to the all too familiar situation that is now before the court: a lawsuit is filed in state court, the action is removed to federal court, there is a motion to remand, and the parties are litigating the question of amount in controversy. Let's be honest. Amount-in-controversy removal/remand cases are weird. But how are they similar to the seemingly incongruous area of Little League baseball? Consider this.

It is late January and the duly appointed Little League Commissioner is preparing to convene the pre-season draft. There are 100 Little Leaguers signed up to play and there will be 10 teams. Ten coaches, who for weeks have been pouring over "scouting reports" and Excel spreadsheets, are jockeying for any draft advantage they can secure. Each coach has his own kid who is numbered among the 100 participants. And, obviously each coach will be selecting his own youngster in the draft. But, the question is this: In what round?

Some of those coaches have kids who are among the best players in the League and are legitimate first round draft picks. And before the draft, the Commissioner will break the bad news to them – your son must be taken in the first round. Yet, other coaches have kids who are good ball players, but simply not first rounders. It would be unfair to require that they be picked that early. And, there is the rub. In what round will a coach whose kid is not a "top player" be required to select their kid? (Spoiler alert: This is one of the areas where the politics in its truest form creep in).

The reality is that coaches have a vested interest in making sure they can take their kids as late in the draft as possible. After all, no one else will be selecting their kids; so, the pro tip is to maximize success in the draft by taking as many valuable players as possible before having to draft your own son. For example, if a coach can draft two pitchers and a shortstop before taking his son, all the better to assemble a championship team.

The League Commissioner will make the final call. But, up to the very moment that decision is made, there is, shall we say, lobbying. Each coach will seek to sway the Commissioner in a manner that would make a K Street influence peddler blush. One coach might say, "My kid's not a pitcher. How could you possibly require me to take him in the second round?" Another will protest, "Look, my son is good, but he's a third baseman; he's not close to a third rounder. A fourth

or fifth round pick at best." Somehow, someway, the Commissioner will utilize the wisdom of Solomon and the patience of Job, and expertly assign each coach's youngster a draft position that is fair and reasonable. The coaches may grumble, but the draft will go on; teams will be selected; and on opening day the umpires will yell "play ball."

However, as the end of the season nears, there's a sudden but certain plot twist. It's time to pick the All-Star team, which in this situation is comprised of the top 15 players in the League. Suddenly, all those coaches who argued their kids weren't quite good enough to be taken in the first or second round adopt an entirely different view. They will return to K Street, and start a campaign contending that their sons are clearly top 15 players, most worthy of All-Star selection.

To some degree that is how it goes when a case is removed to federal court and the amount in controversy is at issue. The key question in that situation is whether the value of the relief that plaintiff seeks in his state court complaint exceeds $75,000. If so, and if other requirements are met, the case can stay in federal court. If not, a case that was previously removed by a defendant must be returned to state court.

There is a familiar pattern to the initial stages of removal litigation. A plaintiff files a state court case. The defendant removes the case to federal court. In its removal papers, the defendant contends the amount in controversy is easily met. After all, as the defendant points out, the plaintiff's claimed damages are astronomical – easily over the $75,000 threshold. Then comes the inevitable motion to remand. In her motion, the plaintiff's counsel argues – channeling the Black Knight in a scene from the 1975 classic Monty Python and the Holy Grail – that all that's been alleged in the complaint is "just a flesh wound."

Then, months later when the case is ready for a pre-trial conference and thereafter a jury trial, the parties' positions are suddenly reversed (just like the Little League dads'). Plaintiff's

3

counsel tells a jury that her client's injuries are catastrophic. Defendant says the plaintiff's damages are virtually nonexistent. Two seemingly distinct situations; same Little League coaches; same lawyers. But in both situations, two vastly different versions of valuation advocated by each side at different times, each dependent on what is at stake.

With this backdrop, the court wades into the parties' arguments.

## II. Background

On January 28, 2025, Plaintiff Clyde David Scott, Jr. ("Plaintiff") filed this case against Defendants Walter D. Hawkins ("Hawkins"), Quality Carriers, Inc., and various fictious defendants in the Circuit Court of Talladega County, Alabama. (Doc. # 1-2 at 3). The action arises from a motor vehicle accident involving Plaintiff and Hawkins that occurred on March 28, 2023 on Interstate-20 near Lincoln, Alabama. (*Id.* at 5 ¶ 5). Based on this accident, Plaintiff asserts claims against Defendants for negligence; wantonness; negligent/wanton hiring, training, retention, and/or supervision; and negligent/wanton entrustment and/or supervision. (*Id.* at 4-11 ¶¶ 4-30). In his Complaint, Plaintiff seeks both compensatory and punitive damages. (*Id.* at 6-9, 11).

Specifically, under his negligence claim, Plaintiff alleges the following:

> As a proximate result of the Defendants' negligent conduct, [he] suffered personal injuries and damages as follows: past and future physical injuries and pain to his body; present, past, and future medical, hospital, pharmacy, and related expenses; past and future loss of enjoyment of life; past and future mental anguish, distress, and worry; temporary and/or permanent disability and/or impairments; past and future lost wages; and other harms and losses.

(*Id.* at 6 ¶ 8).

On March 17, 2025, Defendants filed a Notice of Removal with this court based on diversity jurisdiction under 28 U.S.C. § 1332. (Doc. # 1). In their Notice of Removal, Defendants assert that the parties in this case are completely diverse and the amount in controversy exceeds $75,000. (*Id.* at 2 ¶ 2). Regarding diversity of citizenship, Defendants contend that because

Plaintiff is a citizen of Alabama, Defendant Hawkins is a citizen of Louisiana, and Defendant Quality Carriers is a citizen of Illinois and Florida, complete diversity of citizenship exists. (*Id.* at 2-3 ¶ 4). As to the amount in controversy requirement, Defendants assert that even though Plaintiff's Complaint is silent on the amount of damages sought, based upon the damages Plaintiff alleges in his Complaint, the amount in controversy exceeds $75,000. (*Id.* at 3-6 ¶¶ 5-6).

On April 11, 2025, Plaintiff filed a Motion to Remand the case back to the Circuit Court of Talladega County. (Doc. # 3). He argues Defendants have not establish the requisite amount in controversy.

## III.     Legal Standard

Federal courts are courts of limited rather than general jurisdiction. *Kelly v. Harris*, 331 F.3d 817, 819 (11th Cir. 2003). Accordingly, if either the parties or the court itself question the existence of federal subject matter jurisdiction at any point in the proceedings, the court has a constitutional responsibility to ensure that federal jurisdiction exists before it takes up any other issues presented by the parties. *Mirage Resorts, Inc. v. Quiet Nacelle Corp.*, 206 F.3d 1398, 1400-01 (11th Cir. 2000).

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interests and costs, and in which diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332. Diversity jurisdiction is proper if (1) there is complete diversity of citizenship and (2) the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. The removing party has the burden of establishing subject matter jurisdiction over a case removed to federal court. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010).

"[A]ll doubts about jurisdiction should be resolved in favor of remand to state court." *Vestavia Hills v. Gen. Fidelity Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012).

## IV. Discussion

In his Motion to Remand (Doc. # 3), Plaintiff argues that this case should be remanded because Defendants have failed to meet their burden of satisfying the amount in controversy requirement, and, as a result, this court lacks diversity jurisdiction over this case. The court agrees.

The Eleventh Circuit has held that where, as here, a plaintiff has not specified an amount of damages in his state court complaint, the removing party must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement. *Roe*, 613 F.3d at 1061. A removing defendant may meet this burden by "provid[ing] additional evidence demonstrating that removal is proper" or establishing that it is "facially apparent from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, even when the complaint does not claim a specific amount of damages." *Id.* (internal quotations and citations omitted).

Defendants contend that "the basis of diversity jurisdiction [is] apparent on the face of Plaintiff's Complaint" as "the Complaint's allegations demonstrate that the amount in controversy exceeds $ 75,000." (Doc. # 4 at 1). In their Notice of Removal, Defendants specifically point to Plaintiff's allegations, arguing that his allegations "establish the amount in controversy exceeds $75,000 . . . regardless of the fact the Complaint fails to identify a specific amount sought for damages." (Doc. # 1 at 5). The entirety of the allegations that Defendants rely on are as follows:

> Plaintiff suffered personal injuries and damages as follows: past and future physical injuries and pain to his body; present, past, and future medical, hospital, pharmacy, and related expenses; past and future loss of enjoyment of life; past and future mental anguish, distress, and worry; temporary and/or permanent disability and/or impairment; past and future lost wages; and other harms and losses.

(Doc. # 1-2 at 6 ¶ 8). That is it.

While a "court may make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable," *Jones v. Novartis Pharms. Co.*, 952 F. Supp. 2d 1277, 1282-83 (N.D. Ala. 2013) (quoting *Roe*, 613 F.3d at 1061-62), the court cannot do so here based on Plaintiff's bare allegations. Plaintiff's allegations are devoid of "specific facts on the amount in controversy." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010). Plaintiff's allegations do not specify what particular part(s) of the body were injured, the amount of medical charges incurred, or any account of the medical care provided to Plaintiff. Nor do they indicate any facts from which the court might determine how serious the accident was or how severe Plaintiff's injuries are. "The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1215 (11th Cir. 2007). Therefore, without this information, the court cannot make any reasonable deductions, inferences, or extrapolations to conclude that the amount in controversy requirement is met.

Defendants also contend that "[a]t a minimum, Plaintiff's request for both past and future damages indicates that he has had a regular course of adverse symptoms from his post-accident injuries for the last two years and a regular course of medical treatment over the last two years." (Doc. # 4 at 5-6). But, this argument is purely speculative and conclusory. The court does not have any information regarding what symptoms Plaintiff has experienced or what medical treatment he sought following the accident. Moreover, in the face of Defendants' speculation, there certainly are scenarios where a plaintiff who suffers injuries and receives medical treatment over a period of two years that does not amount to a sum in excess of $75,000. Accordingly, Defendants have not met their burden by simply pointing to the allegations in Plaintiff's Complaint.

Defendants also argue that "Plaintiff's array of wantonness claims erase any doubt that he will seek to recover more than $75,000 in this case." (Doc. # 4 at 7 ¶ 9). But, a wantonness claim, by itself, does not necessarily "render the amount in controversy in excess of $75,000." *Thompson v. Ortensie*, 2017 WL 4772741, at *3 (S.D. Ala. Oct. 23, 2017). To be sure, a "plaintiff's claim for punitive damages is properly considered in the evaluation of whether defendants have shown that the amount in controversy exceeds $75,000. But there is nothing talismanic about such a demand that would *per se* satisfy the amount-in-controversy requirement and trigger federal subject-matter jurisdiction." *Id.* Here, Defendants have identified no specific facts or evidence supporting their contention that Plaintiff's claim for punitive damages would necessarily satisfy, or at least substantially contribute to, the amount in controversy requirement.

Because there is insufficient information regarding Plaintiff's damages (both economic and noneconomic), the extent of his injuries, and the severity of Defendants' alleged wantonness, *on this record*, Defendants have failed to meet their burden.

Defendants also contend that "if any question persists that more than $75,000 is at issue in this case, [they] request leave to conduct discovery to determine the extent of Plaintiff's claim to damages." (Doc. # 4 at 9 ¶ 12). But, such a request for post-removal discovery for the purposes of establishing the jurisdictional amount in a diversity case is "tantamount to an admission that the defendants do not have a factual basis for believing that jurisdiction exists." *Lowery*, 483 F.3d at 1217. As the Eleventh Circuit has explained:

> The court should not reserve ruling on a motion to remand in order to allow the defendant to discover the potential factual basis for jurisdiction. Such fishing expeditions would clog the federal judicial machinery, frustrating the limited nature of federal jurisdiction by encouraging defendants to remove, at best, prematurely, and at worst, in cases in which they will never be able to establish jurisdiction.

*Id.* This is especially true considering that such discovery could, of course, take place in state court.

8

For all of these reasons, the court finds that Defendants have failed to meet their burden of proving, by a preponderance of the evidence, that the amount in controversy is satisfied.

## V.  Conclusion

For the reasons discussed above, Plaintiffs' Motion for Remand (Doc. # 3) is due to be granted. A separate order in accordance with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this May 8, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE